IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| ROOSEVELT JOHNSON | § | |
| | § | |
| V. | § | A-14-CV-926-LY |
| | § | |
| TEXAS WINDSTORM INSURANCE | § | |
| ASSOCIATION and TEXAS FAIR | § | |
| PLAN ASSOCIATION | § | |

REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

TO:    THE HONORABLE LEE YEAKEL
       UNITED STATES DISTRICT JUDGE

Before the Court are: Defendants' Motion for Summary Judgment (Dkt. No. 8); Plaintiff's

Response (Dkt. No. 18); and Defendants' Reply (Dkt. No. 19).  The undersigned submits this Report

and Recommendation to the United States District Court pursuant to 28 U.S.C. § 636(b) and Rule

1(h) of Appendix C of the Local Court Rules of the United States District Court for the Western

District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges.

I.    **Background**

This is an employment discrimination case.  Plaintiff Roosevelt Johnson ("Johnson"), who

is African-American, alleges he was discriminated on the basis of his race when he was not

promoted on two occasions by his employers Texas Fair Plan Association ("TFPA") and Texas

Windstorm Insurance Association ("TWIA").  He also alleges he was constructively discharged by

these lack of promotions.   Johnson began working at TFPA and TWIA on October 18, 2008 as a

contractor.  Dkt. No. 18, Ex. 1.  On January 29, 2010, he was hired to work as a full-time Senior

Claims Adjuster for Defendants.  *Id.*  In December of 2010, Johnson applied for the position of

Catastrophe Manager.  *Id.*  He did not receive the position.  *Id.*  In December of 2011, Johnson

applied for a Litigation Manager position.  *Id.*  On March 5, 2012, Greg Resnick, a white male, was

named as the Acting Litigation Manager. *Id.* In early August of 2012, Resnick was named as Litigation Manager. *Id.* Johnson resigned on August 9, 2012. *Id.*

## II.     Summary Judgment Standard

When a party moves for summary judgment, the reviewing court shall grant the motion "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts on questions of fact must be resolved in favor of the party opposing summary judgment. *See Evans v. City of Houston*, 246 F.3d 344, 348 (5th Cir. 2001) (citation omitted).

## III.    Analysis

Johnson asserts claims of race discrimination for failure to promote and constructive discharge pursuant to the Texas Labor Code and 42 U.S.C. § 1981. Dkt 1-3. On his failure to promote claims, he complains of not receiving both the Catastrophe Manager position, and the Litigation Manager position. With regard to the constructive discharge allegation, he contends that his inability to obtain the two promotions made it clear that he would never be promoted by the Defendants, and was therefore forced to resign.

## A.      Catastrophe Manager Position

Defendants move for summary judgment asserting that Johnson's Texas Labor Code and § 1981 claims for failure to promote related to the Catastrophe Manager position are time barred. Johnson fails to respond to these arguments.

A person claiming to be aggrieved by an unlawful employment practice must file a complaint with the Texas Commission on Human Rights within 180 days after the date the alleged unlawful

employment practice occurred.  TEX. LAB. CODE § 21.202(a) (making it mandatory and jurisdictional that claims under the Texas Labor Code be filed no later than 180 days after the alleged unlawful employment practice).  "A one-time employment event . . . is a discrete action that 'constitutes a separate actionable unlawful employment practice' and therefore should place an employee on notice that a cause of action has accrued.' " *Sauceda v. Univ. of Texas at Brownsville*, 958 F.Supp.2d 761, 770 (S.D. Tex. 2013) (citation omitted).  The limitations period "begins when the employee is informed of the allegedly discriminatory employment decision." *Specialty Retailers v. DeMoranville*, 933 S.W.2d 490, 493 (Tex. 1996).

Johnson's affidavit states that Jim Oliver told Johnson that he was not selected for the Catastrophe Manager position.  Dkt. 18, Ex. 1.  Defendants offer summary judgment evidence that Oliver left employment at TWIA in April of 2011.  Dkt. No. 8, Ex. 2 at 2:20-13:14, 43:12-16. Johnson does not dispute this evidence.  Accordingly, the undisputed summary judgment evidence demonstrates that Johnson was informed that he did not get the Catastrophe Manager position no later than April of 2011.  Johnson filed his EEOC discrimination charge on May 25, 2012.  Dkt. No. 8, Ex. 7.  This claim is therefore time-barred.

The claim brought pursuant to § 1981 is also time-barred.  That statute prohibits employment discrimination on the basis of race.  *Johnson v. Railway Express Agency*, 421 U.S. 454, 459–60 (1975).  Specifically, § 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a).  Section 1981 does not have a statute of limitations.  Instead, federal courts generally apply "the most appropriate or analogous state[1] statute of limitations." *Jones v. R.R.*

---

[1]  Texas's applicable and analogous statute of limitations—that for torts—is two years. *Fonteneaux v. Shell Oil Co.*, 289 Fed. Appx. 695, 699 (5th Cir. 2008), *cert. denied*, 555 U.S. 1171 (2009).

*Donnelley & Sons Company*, 541 U.S. 369, 371 (2004).  In 1990, Congress enacted a 4-year statute of limitations for actions "made possible" by a federal statute enacted after December 1, 1990.  *Id.* at 382; 28 U.S.C. § 1658.  In *Jones*, the Court held that this 4-year catchall applies when "the plaintiff's claim against the defendant was made possible by a post-1990 enactment." 541 U.S. at 382.  Failure to promote claims, like Johnson brings here,  were cognizable under § 1981 under the version of the statute predating December 1, 1990.  A plaintiff could bring a failure to promote claim if the "promotion [rose] to the level of an opportunity for a new and distinct relation between the employee and the employer." *Patterson v. McLean Credit Union*, 491 U.S. 164, 185 (1989), *superseded by statute on other grounds as stated in CBOCS West Inc. v. Humphries*, 553 U.S. 442 (2008).  "In deciding whether a change of position rises to the level of a new and distinct relation, the court must compare the employee's current duties, salary, and benefits with those incident to the new position." *Police Ass'n of New Orleans v. City of New Orleans*, 100 F.3d 1159, 1170–71 (5th Cir. 1996).  If the new position involves "substantial changes," the failure to promote claim was available under § 1981 prior to the 1991 amendments and Texas's two-year prescriptive period applies.  *Fonteneaux v. Shell Oil Co.*, 289 Fed. Appx. 695, 699 (5th Cir. 2008), *cert. denied*, 555 U.S. 1171  (2009).

Defendants have presented summary judgment evidence that establishes that the Catastrophe Manager position involved "substantial changes" from the Senior Claims Examiner position, including a greatly increased salary, supervising personnel, a different job classification, reporting to a different supervisor, and greater management responsibility.  Doc. No. 18, Ex. 2 at 66; Dkt. No. 8, Ex. 4.  Because the two jobs are separate and distinct, the § 1981 claim Johnson is bringing was available prior to the 1991 amendments, and the two year statute of limitations is applicable. *Fonteneaux*, 289 Fed. Appx. at 699 (holding failure to promote claim under Section 1981 was

4

subject to two year limitations period because the desired promotion was a separate job that included supervisory responsibility); *Smith v. Aaron's, Inc.*, 325 F.Supp.2d 716, 723 (E.D. La.2004) (applying Louisiana's one-year limitations period to a § 1981 failure to promote claim); *Wells v. ABF Freight System, Inc.*, 2013 WL 773446 (E.D. La. 2013). Johnson was notified he did not receive the Catastrophe Manager position by April of 2011. He brought his § 1981 claim more than three years later when he added it to this lawsuit on September 26, 2014. Dkt. 1-3. The § 1981 claim related to the Catastrophe Management position is also time-barred.

## B.     Litigation Manager Position

Johnson also contends that the Defendants' failure to promote him into the Litigation Manager position was the result of racial discrimination under the Texas Labor Code and § 1981. The legal framework governing claims under both statutes is the same as for claims brought under Title VII. *See, e.g., Thompson v. City of Waco, Tex.*, 764 F.3d 500, 503 (5th Cir. 2014) (discrimination claim brought under section 1981 is analyzed pursuant to Title VII framework); *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 219 n. 10 (5th Cir. 2001) (claims brought pursuant to Chapter 21 of the Texas Labor Code are analyzed pursuant to Title VII framework). Accordingly, the Court employs the well-developed burden shifting framework dictated by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and its progeny. *See Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 316 (5th Cir. 2004). First, Johnson must make out a prima facie case of discrimination. If he does so, then the burden shifts to the employer to articulate a legitimate non-discriminatory reason for the challenged action. If the employer does so, then the burden shifts back to the plaintiff to demonstrate that the proffered reason for the action is a pretext, and the true reason for the action was discriminatory. *Davis*, 383 F.3d at 317 (citations omitted).

Defendants present five grounds for summary judgment on this claim: (1) Johnson cannot make out a prima facie case of discrimination; (2) there is a nondiscriminatory reason for its decision not to promote Johnson; (3) Johnson cannot produce evidence of pretext; (4) Johnson cannot produce evidence of race discrimination; and (5) Johnson cannot establish that he suffered any damages.

1.    Prima Facie Case

Defendants assert that Johnson cannot make out a prima facie case of race discrimination because he cannot show he was qualified for the Litigation Manager position. In order to establish a prima facie case of race discrimination for failure to promote, a plaintiff must prove: "(1) he was within a protected class; (2) he was qualified for the position sought; (3) he was not promoted; and (4) the position he sought was filled by someone outside the protected class." *Blow v. City of San Antonio, Tex.*, 236 F.3d 293, 296 (5th Cir. 2001). There is no dispute Johnson is within a protected class, was not promoted, and the position for which he applied was filled by someone outside the protected class. At issue is whether he was qualified for the position. Defendants assert that Johnson was not qualified for the position because the Litigation Manager position criteria included a preference that the candidate graduate from a four year accredited college or university, and Johnson did not graduate from college. *See* Dkt. No. 8, Ex. 3. Johnson responds that the criteria for the position merely stated a *preference* that the candidate possess a four year degree and did not require a four year degree. Johnson is correct on this point. A plaintiff need only demonstrate that he met "objective promotion criteria at the prima facie stage of his case." *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 681 (5th Cir. 2001)). A preference is not a requirement.

2.     Non-discriminatory Reason for Failure to Promote

Since Johnson has established a prima facie case, the burden shifts to the defendants "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 259 (1981).  Defendants have come forward with evidence that Johnson was not selected for the Litigation Manager position because he was not the most qualified applicant for the job.  David Williams, the Vice President of Claims for TWIA and TFPA, developed the job listing for the Litigation Manager and made the decision to hire Greg Resnick instead of Johnson because he believed Resnick was more qualified, and because he did not believe that Johnson's skills and experience in certain areas (writing, supervising employees) were sufficient to meet the needs of the position.  Dkt. No. 8-5 at ¶¶ 6-8.  Williams further states that Resnick's experience as a manager and his education surpassed Johnson's.  *Id.* at ¶ 8 (noting that Resnick had a B.A. an MBA*,* and a law degree).  This is sufficient evidence to discharge the Defendants' burden of demonstrating a legitimate, non-discriminatory reason for not selecting Johnson for the position.  *See Price v. Fed. Express Corp.*, 283 F.3d 715, 721 (5th Cir. 2002) (promoted candidate's management experience, military training and ties to local law enforcement served as legitimate, nondiscriminatory reasons for failure to promote plaintiff); *Scott v. Univ. of Miss.*, 148 F.3d 493, 505-07 (5th Cir. 1998) (plaintiff's lack of federal clerkship experience, inferior legal writing experience, and lack of classroom teaching experience as legitimate, nondiscriminatory reasons for failure to hire); *Bennett v. Total Minatome Corp.*, 138 F.3d 1053, 1061 & n. 11 (5th Cir. 1998) (plaintiff's inability to speak French, insufficient offshore experience, and lack of drilling experience recognized as legitimate, nondiscriminatory reasons).

3.     Pretext

This shifts the burden back to Johnson to demonstrate that these stated reasons are pretexts and not the true reasons for the Defendants' decision.  To establish pretext, Johnson argues that he was clearly the better qualified applicant for the Litigation Manager position.  Dkt. No. 18 at p. 11. When a plaintiff relies on comparative qualifications to establish an inference of pretext, the "disparities in qualifications must be of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question." *Bright v. GB Bioscience, Inc.*, 305 F. App'x 197, 205 n. 8 (5th Cir. 2008); *see also EEOC v. La. Office of Cmty. Servs.*, 47 F.3d 1438, 1444 (5th Cir. 1995) ("A fact finder can infer pretext if it finds that the employee was 'clearly better qualified' (as opposed to merely better or as qualified) than the employees who are selected.").  This is a high bar, and meeting it requires more than mere speculation. *Celestine v. Petroleos de Venezuela SA*, 266 F.3d 343, 347 (5th Cir. 2001).

Johnson argues that he was clearly better qualified for the Litigation Manager position than Resnick.  *See* Dkt. No. 18 at 9.  Johnson asserts that the primary duty of the Litigation Manager position was to review files in litigation and to assist the legal department in determining the most favorable settlement value for the employer.  He asserts that he possessed this skill while Resnick did not and that he was a better representative at mediations than Resnick.  Johnson points to his experience as a field adjuster and his record of success mediating and settling claims as evidence that he was the more qualified applicant. Dkt. No. 18, Exs.1 & 3.

In his declaration explaining his decision to hire Resnick, Williams testified that he developed the requirements for the Litigation Manager role, and the key responsibilities for the position were:

- assisting the Vice President of claims and corporate legal with litigation management function;

- directly supervising supervisors and examiners;

- identifying and escalating emerging issues to management with recommendations;

- evaluating litigated claim files with counsel to determine litigation strategy;

- making presentations at claims conferences and mediations;

- negotiating solutions with favorable outcomes; and

- tracking litigated and represented claims for the organization.

Dkt. No. 8-3 at ¶ 3.  As noted, the preferred education for an applicant was a diploma from a four-year accredited college or university.  Williams testified that he was seeking a person with a high level of expertise in claims management, good written and communication skills, ten-plus years proven industry experience in progressively responsible roles, and five years claims management experience.  *Id.*  In comparing Johnson's qualifications with those of Resnick, the candidate selected for the position, Williams testified that:

> Mr. Johnson did not have sufficient claims management experience.  Furthermore, Mr. Johnson did not have any management or supervisory responsibility in his role as a Senior Claims Examiner and did not have any management or supervisory experience at TWIA or TFPA.  Mr. Johnson did a very good job with settling litigation matters.  However, Mr. Johnson struggled with his communication skills, especially written communication, and did not demonstrate that he had the necessary management or people skills for the litigation management role.

> Greg Resnick, who was selected as the Acting Manager-Claims  Litigation, TWIA & TFPA, had substantially more relevant experience at TWIA than Mr. Johnson.  Mr. Resnick had worked at TWIA longer than Mr. Johnson, had more management experience, and more education.  For example, Mr. Resnick had been working for TWIA and TFPA since 2005, had been a Senior Claims Examiner who handled mediations on behalf of TFPA, and became a Senior Project Manager with direct reports that he was managing in the TFPA claims department.  Mr. Resnick's prior supervisory experience included a role as a catastrophe claims supervisor for Century National Insurance Company from 2002 – 2005, immediately prior to his coming to work for TWIA and TFPA.  In addition, Mr. Resnick had more education, including a bachelor's degree, a Masters in Business Administration, and a law degree.

9

*Id.* at ¶¶6-8.

Contrary to Johnson's arguments, this evidence shows that the Litigation Manager position required management and supervisory skills, skills that Johnson lacked and Resnick possessed. Additionally, Resnick was more educated than Johnson and a four-year degree was a stated preference for the candidate. Defendants have presented summary judgment evidence that Johnson's communication skills were lacking and that Johnson had acknowledged this. Dkt. Nos. 8-7 to 8-10. Moreover, Johnson had not managed people for over twenty years and he had not had any supervisory or management responsibilities while working for Defendants. Dkt. No. 8-5. Resnick was promoted from a position where he was already managing Defendants' claims personnel. Additionally, Resnick had worked at TWIA longer that Johnson.[2]

This evidence does not come close to demonstrating that Johnson was "clearly better qualified" for the Litigation Manager than Resnick. It is undisputed that Resnick possessed more management experience, had worked at TWIA longer, and possessed significantly more education that Johnson. Further, because the position involved managing and tracking litigation, Resnick's law degree also placed him ahead of Johnson. Johnson has offered no evidence to counter Defendants' claim that supervisory experience was important for the position to which Resnick was promoted. Overall, the evidence actually proves the opposite of what Johnson contends—it would appear that Resnick was clearly the more qualified candidate among the two. Under Title VII, an employer is free to choose among equally qualified candidates as long as the employer does not apply unlawful criteria. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 259. "One can hardly find

---

[2]Johnson became a full-time permanent employee in 2010. Dkt. No. 18, Ex. 1. Resnick had worked for Defendants since 2005. Dkt No. 8-5.

mendacity by the employer when 'its judgments on qualifications are somewhere within the realm

of reason.'" *Churchill v. Tex. Dep't of Crim. Justice*, 539 Fed. Appx. 15, 321 (5th Cir. 2013)

(citation omitted).  The evidence fails to raise a material fact on this point.  *See Martinez v. Tex.

Workforce Comm'n*, 775 F.3d 685, 688 (5th Cir. 2014).  Johnson has failed to present any evidence

of pretext or race as the real reason for the Defendants' decision not to hire Johnson.

## C.    Constructive Discharge

Finally, Johnson contends that he was constructively discharged by Defendants because "it

became increasingly clear that Mr. Johnson was not going to be considered for any promotions at

TWIA/TFPA, and was thus being constructively discharged from his position with Defendants."

(Dkt. 1-3 at ¶ 28).  This claim also fails.

"A constructive discharge occurs when the employer makes working conditions so intolerable

that a reasonable employee would feel compelled to resign."  *Hunt v. Rapides Healthcare System,

LLC*, 277 F.3d 757, 771 (5th Cir. 2001).  Factors courts consider when determining whether an

employee has been constructively discharged include "(1) demotion; (2) reduction in salary;

(3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) badgering,

harassment, or humiliation by the employer calculated to encourage the employee's resignation; or

(6) offers of early retirement that would make the employee worse off whether the offer was

accepted or not." *Id.* at 771–72 ("The question is not whether [the employee] felt compelled to

resign, but whether a reasonable employee in her situation would have felt so compelled.").  Johnson

presents no evidence of any of these factors; instead, he makes the rather audacious claim that he was

constructively discharged—that is, his job conditions were made so intolerable that he was forced

to resign—because Defendants did not promote him (despite the fact that he was given a raise in

April 2012 and was told by Williams that "he was very well thought of by the leadership and that we very much appreciated his efforts in resolving the TFPA Hurricane Ike litigation." Dkt. No. 8-5; 8-2 at 153:1-155:22; 218:16-219:12).

A failure to promote cannot by itself demonstrate a constructive discharge. *Boze v. Branstetter*, 912 F.2d 801, 805 (5th Cir. 1990); *see also Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir. 2001). The sole case Johnson relies on for this argument, *Jurgens v. E.E.O.C.*, 903 F.2d 386 (5th Cir. 1990), does not support his position. Instead, it stands for the proposition that where an employer discriminatorily denies a promotion to an employee, that, without more, cannot be reasonably construed as a career-ending action sufficient to comprise a constructive discharge: "As a matter of law such a remote possibility would not make a reasonable employee feel compelled to resign." *Id.* at 392. *See also Junior v. Texaco, Inc.*, 688 F.2d 377, 380 (5th Cir. 1982)); *Calcote v. Texas Educ. Found.*, 578 F.2d 95, 96-97 (5th Cir. 1978) (dimmed future job prospects based upon the employer's past discrimination in promotions are not alone enough to support a finding of constructive discharge).

Finally, the summary judgment evidence demonstrates not only that the conditions at TWIA and TFPA were not so intolerable that they caused Johnson to resign, but also supports the conclusion that Johnson left Defendants' employ for greener pastures. As early as February of 2012, Johnson was engaged in discussions about starting an independent adjusting company. Dkt. 18, Ex. 2 at 245, 180, 187-189. Though Johnson claims that he was forced to resign from his position with Defendants in August 2012, when he figured out that he had no future there, he had started planning his exit months earlier, and he commenced work as an independent adjuster at the company he

12

founded and owned on September 1, 2012. *Id.* at 102. The undisputed evidence demonstrates that Johnson was not constructively discharged.[3]

### III. RECOMMENDATION

Based upon the foregoing, the undersigned Magistrate Judge **RECOMMENDS** that the Court **GRANT** Defendants' Motion for Summary Judgment (Dkt. No. 8) and enter judgment that Plaintiff take nothing on his claims against Defendants.

### IV. WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report, and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 474 U.S. 140, 150-53, 106 S. Ct. 466, 472-74 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

---

[3]Because Defendants are entitled to summary judgment on liability as to all of Johnson's claims, the Court will not address Defendants' argument regarding the lack of evidence of damage.

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 21st day of May, 2015.


_____

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE